1  **WO**
2
3
4
5
6             **IN THE UNITED STATES DISTRICT COURT**
7              **FOR THE DISTRICT OF ARIZONA**
8
9  Joseph S.,                              No. CV-19-03375-PHX-DGC
10              Plaintiff,                 **ORDER**
11  v.
12  Andrew M. Saul, Commissioner of the
    Social Security Administration,
13
              Defendant.
14
15

16      Plaintiff Joseph S. seeks review under 42 U.S.C. § 405(g) of the final decision of
17  the Commissioner of Social Security ("the Commissioner") which denied his application
18  for social security benefits. Because the decision of the Administrative Law Judge ("ALJ")
19  is not supported by substantial evidence and is based on legal error, the Commissioner's
20  decision will be vacated and the matter remanded for further administrative proceedings.
21  **I.    Background.**
22      Plaintiff is a 56-year old man with a college education. A.R. 63, 189. He previously
23  worked as a civil engineer officer, construction superintendent, and estimator. A.R. 95,
24  54-56. On May 18, 2015, Plaintiff applied for disability insurance benefits, alleging
25  disability beginning March 13, 2015. A.R. 16, 63. On January 22, 2018, Plaintiff and a
26  vocational expert appeared and testified at a hearing before the ALJ. A.R. 33, 54-56. On
27  May 3, 2018 the ALJ issued a decision that Plaintiff was not disabled within the meaning
28

of the Social Security Act. A.R. 13-32. The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the Commissioner's final decision. A.R. 1-6.

## II. Legal Standard.

The Court reviews only those issues raised by the party challenging the ALJ's decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The Court may set aside the Commissioner's disability determination only if the determination is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla, less than a preponderance, and relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* In determining whether substantial evidence supports a decision, the Court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* (internal citations and quotation marks omitted). As a general rule, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted). The ALJ is responsible for resolving conflicts in medical testimony, determining credibility, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). In reviewing the ALJ's reasoning, the Court is "not deprived of [its] faculties for drawing specific and legitimate inferences from the ALJ's opinion." *Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989).

## III. The Five-Step Evaluation Process.

Whether a claimant is disabled is determined using a five-step evaluation process. The claimant must show that (1) he is not currently working, (2) he has a severe impairment, and (3) his impairment meets or equals a listed impairment or (4) his residual functional capacity ("RFC") precludes him from performing past work. If the claimant meets his burden at step three, he is presumed disabled and the process ends. If the inquiry proceeds and the claimant meets his burden at step four, the Commissioner must show at the fifth and final step that the claimant is able to perform other work given his RFC, age,

education, and work experience. 20 C.F.R. § 416.920(a)(4)(i)-(v); *see Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

Plaintiff has met his burden at steps one and two: he has not worked since the alleged date of disability and has severe cervical stenosis, status post cervical fusion, and headaches. A.R. 20. The ALJ determined at step three that Plaintiff does not have a listed impairment. *Id.*; *see* Appendix 1 to Subpart P of 20 C.F.R. Pt. 404. At step four, the ALJ found that Plaintiff retained the RFC to perform work at the sedentary exertional level, except that he is "limited to jobs that allow him to stand and stretch for 1-2 minutes every hour." A.R. 20. The ALJ additionally found that:

> [Plaintiff] can frequently climb ramps and stairs, balance and stoop along with occasionally crouch, kneel, and crawl, but never climb ladders, ropes, or scaffolds. He can occasionally reach overhead bilaterally. He can have occasional exposure to excessive loud noises, excessive vibration, dangerous with moving mechanical parts and unprotected heights.

*Id.*

The ALJ concluded the analysis at step four, finding that Plaintiff was not disabled and could go back to work as a civil engineer officer and estimator. A.R. 24.

**IV.    Analysis.**

Plaintiff argues the ALJ's decision is defective for two reasons: (1) The ALJ rejected Plaintiff's symptom testimony in the absence of specific, clear, and convincing reasons; and (2) the ALJ erred in discrediting Plaintiff's medical expert and determining Plaintiff's RFC in the absence of any basis supported by substantial evidence. Doc. 12 at 13, 21. The Court will address each argument below.

**A.    Evaluation of Plaintiff's Symptom Testimony.**

The ALJ must engage in a two-step analysis in evaluating a claimant's symptom testimony. First, the ALJ must determine whether the claimant presented objective medical evidence of an impairment that could reasonably be expected to produce the symptoms alleged. *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014). The claimant is not required to show that his impairment could reasonably be expected to cause the severity of

the symptoms he alleges, only that it could reasonably have caused some degree of the symptoms. *Id.* Second, if there is no evidence of malingering, the ALJ may reject the claimant's symptom testimony only by giving specific, clear, and convincing reasons. *Id.* at 1015. "This is not an easy requirement to meet: 'The clear and convincing standard is the most demanding required in Social Security cases.'" *Id.* (quoting *Moore v. Comm'r of Soc. Sec.*, 278 F.3d 920, 924 (9th Cir. 2002)).

Plaintiff testified at the hearing that severe back pain and headaches prevent him from working on a sustained basis. A.R. 49-50. He described his back pain as constant, noting that any physical activity worsens his symptoms and that it is hard to sit, stand, or stay in one position for more than 15-minutes at a time. A.R. 42-44. Plaintiff also testified that his pain radiates down to his hands and he occasionally drops objects because he has difficulty gripping things. A.R. 45-46.

Plaintiff noted that his pain is, on average, at a level 7 out of 10, and that he applies ice and stretches his neck for 12 to 16 hours daily in order to stop his neck spasms. A.R. 38-39. Without icing his neck frequently, Plaintiff's pain would be much higher and he "may have committed suicide already." A.R. 40.

Plaintiff also testified about the severity of headaches he experiences weekly. A.R. 40-42. He testified: "Light bothers me, and noise bothers me when [the headaches] get intense, so I'm usually in a dark room where it's quiet, and just icing, and trying to stretch to relieve the tension, which once I can get my neck stretched, it helps the headaches go down and away." A.R. 42. Such headaches last for 2 to 3 hours at a time. A.R. 41.

The ALJ found that Plaintiff's impairments could reasonably be expected to cause the alleged symptoms. A.R. 21. But the ALJ found Plaintiff's statements regarding the intensity, persistence, and limiting effects of the symptoms not credible to the extent they are inconsistent with the ALJ's RFC assessment. *Id.* In other words, the ALJ found Plaintiff's statements not credible to the extent he claims that he is unable to perform in a competitive work environment. The ALJ also found that Plaintiff's symptom testimony was inconsistent with the medical evidence in the record and his daily activities. *Id.*

### 1. Symptom Testimony Unsupported by the Record.

"Pain of sufficient severity caused by a medically diagnosed 'anatomical, physiological, or psychological abnormality' may provide the basis for determining that a claimant is disabled." *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997) (citing 42 U.S.C. § 423(d)(5)(A); *Bunnell v. Sullivan*, 947 F.2d 341, 344-45 (9th Cir. 1991)). "Once a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints based solely on lack of objective medical evidence to fully corroborate the alleged severity of pain." *Moisa v. Barnhart*, 367 F.3d 882, 885 (9th Cir. 2004) (citation and alterations omitted); *see Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996) ("The claimant need not produce objective medical evidence of the pain . . . itself, or the severity thereof. Nor must the claimant produce objective medical evidence of the causal relationship between the medically determinable impairment and the symptom.") (citing *Bunnell*, 947 F.2d at 345-48); 20 C.F.R. § 404.1529(c)(2) ("[W]e will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the objective medical evidence does not substantiate your statements."); *see also* SSR 95-5p, 1995 WL 670415, at *1 (Oct. 31, 1995) ("Because symptoms sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone, careful consideration must be given to any available information about symptoms.").

Unless the ALJ "makes a finding of malingering based on affirmative evidence thereof, [he] may only find [the claimant] not credible by making specific findings as to credibility and stating clear and convincing reasons for each." *Robbins*, 466 F.3d at 883 (citing *Smolen*, 80 F.3d at 1283-84). "'General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints.'" *Reddick*, 157 F.3d at 722 (quoting *Lester*, 81 F.3d at 834); *see Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993) (same).

The ALJ found that the objective and clinical evidence since Plaintiff's surgery do not show disabling pain and limitations. A.R. 22. The ALJ notes that while Plaintiff alleges shooting pain and numbness in the upper extremities, further medical studies of the upper extremities found no abnormalities. A.R. 21. The ALJ highlighted that after Dr. Lieberman performed a cervical fusion on Plaintiff, follow-up medical imaging observed stable alignment and medical records showed that his pain had resolved 80% since surgery. A.R. 22.

As already noted, "an adjudicator may not reject a claimant's subjective complaints based solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain." *Bunnell*, 947 F.2d at 345; *Garrison*, 759 F.3d at 1014 (quoting *Smolen*, 80 F.3d at 1282 (a claimant need not produce "objective medical evidence of the pain or fatigue itself, or the severity thereof")). But an ALJ may rely on contradictory medical evidence to discredit symptom testimony, so long as she "make[s] specific findings justifying [her] decision." *Carmickle v. Comm'r of Soc. Sec.*, 533 F.3d 1155, 1161 (9th Cir. 2008).

Plaintiff alleges that the ALJ's discussion of medical evidence was erroneous because it did not tie the characterization of the medical record to any particular symptom testimony. Doc. 12 at 14-15. The Court agrees. The ALJ discussed Plaintiff's testimony about the severity of the pain in his neck and back, and the headaches which prevent him from performing substantial gainful activity. A.R. 21. But in finding that "these symptoms fail to correspond with the explanations and evidence cited in [the] decision," the ALJ points to medical studies which found no abnormalities in Plaintiff's upper extremities. *Id.* The ALJ does not explain why the pain Plaintiff described could be produced only by visible abnormalities, nor does she tie the lack of abnormalities to any specific testimony she discusses.

The ALJ also noted that medical records confirmed that Plaintiff's pain had resolved 80% since his April 2014 surgery and that he was no longer having headaches. A.R. 22. But the ALJ cites to a single report from one month after Plaintiff's spinal surgery, which

is in stark contrast to the remainder of the medical record. *See* A.R. 933; *see also Ainans v. Bowen*, 853 F.2d 643, 644 (9th Cir. 1987) (holding that when considering whether substantial evidence supports agency rationale, a reviewing court "must consider the record as a whole, weighing both the evidence that supports and the evidence that detracts from the conclusion."). The ALJ fails to address that as early as October 2014, Plaintiff's "stabbing, shooting and tingling pain across his neck, with radiation up into the right side of neck and into the head," had returned. A.R. 872. Dr. Lieberman, Plaintiff's treating physician, observed tenderness to palpitation of his cervical spine and reduced cervical range of motion. A.R. 873. A CT scan a month later indicated loosening of the C3 screw, a disc osteophyte ridge at the C4-5 level, that caused mild spinal canal stenosis and moderate foraminal stenosis, a disc osteophyte at the C5-6 level, and a disc protrusion at the C6-7 level, that caused mild central canal stenosis. A.R. 920-21. A CT scan in January 2015 revealed similar results. *See* A.R. 770-71.

Although Plaintiff saw some improvement in headache frequency by February 2015, he continued to describe persistent neck pain and headaches that occurred four to five times a week. A.R. 772. Plaintiff unsuccessfully sought pain management treatment for his symptoms, which continued well after the 2014 report the ALJ cites. *See, e.g.*, A.R. 775, 776, 781, 1533, 1541, 1630, 1663. Plaintiff's cervical MRI in January 2016 revealed the following:

- A disc protrusion at the C3-4 level that cause mild spinal stenosis and mild spinal cord deformity;
- osteophytes at the C4-5 level that caused mild spinal stenosis, mild spinal cord deformity, and mild foraminal narrowing;
- a disc herniation at the C5-6 level that caused moderate spinal stenosis and mild spinal cord deformity; and
- a disc herniation and bulge at the C6-7 level that caused moderate spinal stenosis and mild spinal cord deformity.

A.R. 1666-67. Based on these results, Dr. Igor Yusupov concluded that Plaintiff's "symptoms are severe and debilitating." A.R. 1662.

In short, the ALJ's reliance on a single report from 2014 amounts to "improper cherry-pick[ing]" and is not a clear and convincing reason to discount Plaintiff's testimony considering the record as a whole. *Ghanim v. Colvin*, 763 F.3d 1154, 1164 (9th Cir. 2014); *see Diedrich v. Berryhill*, 874 F.3d 634, 642 (9th Cir. 2017).

The ALJ also found that Plaintiff's examinations showed normal gait, sensation, and strength, and found this "suggests a significant residual ability to stand, walk, lift and carry despite his pain complaints." A.R. 22. But the ALJ must assess a claimant's work capacities based on the ability to sustain work-related activities "on a regular and continuing basis." 20 C.F.R. § 404.1545(b); *see* Soc. Sec. Ruling 96-8p, 1996 WL 374184, at *1 (July 2, 1996) ("A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule."). Because the ALJ has not done so here, the evidence cited is not a clear and convincing reason to reject Plaintiff's testimony.

The ALJ further found that the "[t]reatment notes show [Plaintiff] responded well to conservative treatment for his headaches in contradiction to his testimony of disabling symptoms." A.R. 22. But the ALJ again cites a single report from 2014 to show a complete resolution of headaches. *Id.* Nor is the ALJ's reliance on Plaintiff taking over the counter medications as needed for his headaches a clear and convincing reason to discredit his testimony. A.R. 22. The ALJ failed to note that Plaintiff was previously prescribed Nabumetone (a nonsteroidal anti-inflammatory drug), Tizanidine (a muscle relaxant), and Vicodin (a narcotic analgesic). A.R. 222, 778, 1544. "The fact that physicians willingly prescribed drugs . . . indicated that they believed the claimant's symptoms were real. . . . [P]owerful pain medication – and that physicians were willing to prescribe this course of treatment – reflects that [claimant's] symptoms caused him real problems." *Scrogham v. Colvin*, 765 F.3d 685, 701 (7th Cir. 2014). Plaintiff testified that he did not take Vicodin out of fear of becoming addicted: "So, one of the last doctors that prescribed opiates for me told me that I was going to be addicted, that there was just nothing I could do about it with the amount of pain I was in, and the constant use that I was, I was going

to become addicted." A.R. 47-48. The ALJ fails to address this portion of Plaintiff's testimony.[1]

## 2. Inconsistency with Plaintiff's Daily Activities.

"In evaluating the claimant's testimony . . . the ALJ may consider inconsistencies either in the claimant's testimony or between the testimony and the claimant's conduct." *Molina v. Astrue*, 674 F.3d 1104, 1112-13 (9th Cir. 2012). "While a claimant need not 'vegetate in a dark room' in order to be eligible for benefits, the ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting. Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." *Id.* at 1113 (citations omitted).

As far as his daily activities are concerned, Plaintiff testified as follows:

> I don't really do much of anything. Usually, I'm woken up by the pain, and get out of bed at 2:00, or 3:00 in the morning. I immediately go to a chair that I have in the living room . . . and I put ice on my neck, and start stretching. That's how my day begins. I may, depending on how I feel, there's a dog park across the street, I might walk over there with my dog and let him run around. Come back, have breakfast. I'm usually back in my chair with ice, and stretching again for most of the day. Sometimes I turn the TV on, but I don't really watch it. It's just kind of background noise to distract me because the less that I think about the pain, the easier it is for me to kind of disassociate myself from it, and make it through the day.
>
> \* \* \*
>
> I don't go anywhere. I don't see my friends. You know, my kids come over a couple times a year to see me, but I don't, I don't go anywhere.

---

[1] The ALJ also states that "the record notes no phonophobia, nausea, vomiting, or hospitalizations due to [Plaintiff's] headaches," which is "in stark contrast to testimony of daily headaches lasting 3-4 hours." A.R. 22. Based on the entire record, the Court cannot conclude that the absence of the kinds of evidence described by the ALJ is a clear and convincing reason to discredit Plaintiff's symptom testimony.

A.R. 49. Plaintiff also testified that he can "dust mop the floor, or wash a few dishes, or a load of laundry that isn't heavy." A.R. 48. Plaintiff testified, however, that he cannot do anything requiring physical exertion such as vacuuming or doing yardwork. *Id.*

The ALJ found that Plaintiff's "activities of daily living illustrate a person more able bodied than alleged, which further supports the aforementioned [RFC]." A.R. 22. The ALJ specifically found:

> On a routine basis, [Plaintiff] takes care of his personal hygiene, does some light housework and prepares simple meals, attends medical appointments, drives and grocery shops with his wife . . . [and] noted walking two to three miles daily on a treadmill for 45 to 60 minutes, which appears to contradict his testimony of an ability to walk for only 15 minutes.

*Id.* The ALJ also noted that medical records from 2014 and 2015 described Plaintiff working out with light weights, despite his allegations of an ability to lift five to ten pounds. *Id.*

The ALJ has not cited anything in the record indicating that a substantial part of a typical day was spent engaging in activities inconsistent with disabling limitations. *See Vertigan v. Halter*, 260 F.3d 1044, 1049-50 (9th Cir. 2001). This is important because "[t]he critical differences between activities of daily living and activities in a full-time job are that a person has more flexibility in scheduling the former than the latter, can get help from other persons . . ., and is not held to a minimum standard of performance, as [he] would be by an employer." *Garrison*, 759 F.3d at 1016 (citation omitted). Further, Plaintiff's testimony that he is able to walk only for 15 minutes is contradicted by his statement of walking for 45 to 60 minutes a day. *See* A.R. 43, 220. But the ALJ did not consider the progression of Plaintiff's symptoms from when that statement was made in a daily activity questionnaire to 2016, when Dr. Yusupov noted that his "symptoms are severe and debilitating." A.R. 1662. Likewise, the ALJ's citation to records indicating Plaintiff worked out with light weights is inapposite, as these records do not indicate an ability to lift more than ten pounds (*see* A.R. 872, 940) and were part of Plaintiff's physician ordered home exercise program following his spinal surgery (*see* A.R. 871).

"[T]he mere fact [that Plaintiff] has carried on certain daily activities . . . does not in any way detract from [his] credibility as to [his] overall disability," especially given the minimal level of reported activities and the manner in which Plaintiff completes them. *Orn*, 495 F.3d at 639 (quoting *Vertigan*, 260 F.3d at 1050); *see Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) ("The Social Security Act does not require that claimants be utterly incapacitated to be eligible for benefits, and many home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication." (citations omitted)). This was not a clear and convincing reason to discredit Plaintiff's testimony.

### B. Medical Opinion Evidence.

A physician's opinion may be a treating source, examining source, or non-examining source. *See* 20 C.F.R. § 404.1527 (evaluating opinion evidence for claims filed before March 2017); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). A treating physician is one who provides or has provided the claimant with medical treatment or evaluation, or who has an ongoing treatment relationship with the claimant. 20 C.F.R. § 404.1527(a)(2). Generally, an ALJ should give greatest weight to a treating physician's opinion and more weight to the opinion of an examining physician than a non-examining physician. *See Andrews*, 53 F.3d at 1040-41; *see also* 20 C.F.R. § 404.1527(c)(2)-(6).

If it is not contradicted by another doctor's opinion, the opinion of a treating or examining physician can be rejected only for "clear and convincing" reasons. *Lester*, 81 F.3d at 830 (citing *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988)). "Even if the treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject this opinion without providing 'specific and legitimate reasons' supported by substantial evidence in the record for so doing." *Id.* "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes*, 881 F.2d at 751.

"The ALJ must do more than offer [her] conclusions. [She] must set forth [her] own interpretations and explain why they, rather than the doctors', are correct." *Embrey*, 849 F.2d at 421-22. The Commissioner is responsible for determining whether a claimant meets the statutory definition of disability and does not give significance to a statement by a medical source that the claimant is "disabled" or "unable to work." 20 C.F.R. § 416.927(d).

Plaintiff challenges the ALJ's findings with respect to Dr. Lieberman's opinions, which were afforded partial weight. Doc. 12 at 21; A.R. 23. Because Dr. Lieberman is a treating physician whose opinion is contradicted by another doctor, the ALJ could discount his opinion by giving specific and legitimate reasons that are supported by substantial evidence. *Lester*, 81 F.3d at 830.

### a. Dr. Lieberman's Opinion.

On August 12, 2015, Dr. Lieberman completed a check-box form indicating that Plaintiff could sit for a single period of 3 hours at a time, for a total of 6 hours in an 8-hour workday. A.R. 223. Dr. Lieberman also noted an occasional ability to perform simple grasping, a frequent ability to perform fine manipulation bilaterally, and a requirement that Plaintiff be able to "move/switch positions every 30 minutes." A.R. 223, 224. Finally, Dr. Lieberman noted that Plaintiff is moderately limited by pain and fatigue. A.R. 225.

### b. Reasons.

The ALJ appears to identify two reasons for giving Dr. Lieberman's opinion partial weight: (1) Dr. Lieberman failed to cite to any specific objective findings; and (2) Plaintiff's medical records did not support the severity of limitations assessed by Dr. Lieberman. A.R. 23.

#### 1. First Reason.

With respect to the first reason, the ALJ gave "partial weight to the opinion of Dr. Lieberman since he failed to cite to any specific objective findings and lacked the entirety of the medical records" when he completed a check-box form assessing Plaintiff's ability to do work related activities. A.R. 23, 223. The Ninth Circuit has provided conflicting

guidance on the effect of check-box forms. In *Molina v. Astrue*, 674 F.3d 1104 (9th Cir. 2012), the court stated that an "ALJ may permissibly reject check-off reports that [do] not contain any explanation of the bases of their conclusions." *Id.* at 1111-12 (citation and quotation omitted). More recently, and without citing *Molina*, the Ninth Circuit stated that ALJs may not "reject the responses of a treating physician without specific and legitimate reasons for doing so, even where those responses were provided on a 'check-the-box' form, were not accompanied by comments, and did not indicate to the ALJ the basis for the physician's answers." *Trevizo v. Berryhill*, 871 F.3d 664, 677 n.4 (9th Cir. 2017).

A rational explanation of the correct approach was provided in *Burrell v. Colvin*, 775 F.3d 1133, 1140 (9th Cir. 2014):

> An ALJ may discredit treating physicians; opinions that are conclusory, brief, and unsupported by the record as a whole or by objective medical findings. Indeed, Dr. Riley's assessments are of the "check-box" form and contain almost no detail or explanation. But the record supports Dr. Riley's opinions because they are consistent both with Claimant's testimony at the hearing and with Dr. Riley's own extensive treatment notes which, as discussed above, the ALJ largely overlooked. The ALJ clearly erred in his assessment of the medical evidence, overlooking nearly a dozen reports related to head, neck, and back pain.

*Id.* at 1140 (quotation marks and citations omitted).

Dr. Lieberman's check-box form is conclusory and brief, containing only a short note that "[Plaintiff] should be able to move/switch positions every 30 minutes." A.R. 223. But like the form in *Burrell*, this is not fatal as the entirety of the record supports Dr. Lieberman's conclusions. The ALJ overlooked the fact that Plaintiff's testimony is consistent with extensive treatment notes throughout the record, including those of Dr. Lieberman. As Dr. Lieberman's earliest treatment notes state:

> [Plaintiff] has pain in neck and bilateral arm pain. More worse on right than left. He has a stabbing pain in cervical area with radiation to both arms. His pain is 80% in neck and 20% in upper extremities. He has numbness and tingling in arms when neck pain is severe. His pain now is 4/10. His pain on average is 7/10. His pain at worst is 10/10. His pain at best is 3/10.

A.R. 861. Despite some evidence that Plaintiff's symptoms appeared to be improving (*see* A.R. 870), Dr. Lieberman's subsequent treatment notes indicated a progression of symptoms, which are consistent with Plaintiff's testimony (*see, e.g.*, A.R. 872-82). Because the overall record tends to support Dr. Lieberman's conclusions, the fact that he completed a check-box form is not itself a specific and legitimate reason for discrediting his opinion.

### 2. Second Reason.

The ALJ noted that Dr. Lieberman's findings in the record note Plaintiff's normal gait, strength, and sensation. A.R. 23. Plaintiff argues that "the ALJ effectively acted as her own medical expert, by assessing [Plaintiff's] work capacities based on her own evaluation of the medical evidence, in the face of contrary medical opinion evidence." Doc. 12 at 22. The Court agrees.

The ALJ must do more than offer unsupported conclusions. She must set forth her "own interpretations and explain why they, rather than the doctors,' are correct." *Embrey*, 849 F.2d at 421-22. Aside from citing "normal gait, strength, and sensation" in particular areas of the record, the ALJ does not explain why she is correct. By failing to explain why she is correct and Dr. Lieberman is incorrect, the ALJ "reject[ed] the informed medical opinion of [Plaintiff's] primary treating physician and instead improperly substituted her judgment for that of the doctor." *Trevizo*, 871 F.3d at 683; *see Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000) ("As this Court has counseled on many occasions, ALJs must not succumb to the temptation to play doctor and make their own independent medical findings.").

Moreover, in limiting her analysis to findings of "normal gait, strength, and sensation" and "EMG studies noting no abnormalities," rather than considering the entirety of the medical record, the ALJ excluded a large swath of medical evidence showing persistent back and neck pain. *See, e.g.*, A.R. 775, 776, 781, 861, 872, 1007, 1018, 1136, 1503, 1533, 1541, 1630, 1663. The Court cannot affirm the ALJ's opinion simply by isolating a "specific quantum of supporting evidence" out of a mixed and complex record,

about which the ALJ failed to make comprehensive, specific, and legitimate findings. *Orn*, 495 F.3d at 630.

**C.     Remand.**

The ALJ erred in discrediting Plaintiff's symptom testimony and the opinion of Dr. Lieberman. Plaintiff contends that, crediting this evidence as true, the Court must remand for an award of benefits. Docs. 12 at 18, 18 at 8. Defendant counters that the appropriate remedy is a remand for further proceedings. Doc. 18 at 17.

"When the ALJ denies benefits and the Court finds error, the Court ordinarily must remand to the agency for further proceedings before directing an award of benefits." *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017). Under a "rare exception" to this rule, the Court may remand for an immediate award of benefits after conducting a three-part inquiry:

> First, the Court asks whether the ALJ failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion. Next, the Court determines whether there are outstanding issues that must be resolved before a disability determination can be made, and whether further administrative proceedings would be useful. When these first two conditions are satisfied, [the Court] will then credit the discredited testimony as true for the purpose of determining whether, on the record taken as a whole, there is no doubt as to disability.

*Id.* (internal quotation marks and citations omitted). *Leon* emphasized that the Court has discretion to remand for further proceedings even if it reaches the third step in the process. *Id.* "Where an ALJ makes a legal error, but the record is uncertain and ambiguous, the proper approach is to remand the case to the agency." *Id.* (quotation marks omitted).

The first step is satisfied. The ALJ failed to provide legally sufficient reasons for discounting Plaintiff's testimony and the opinion of Dr. Lieberman.

Applying step two, the Court concludes that outstanding issues must be resolved before a disability determination can be made. Although the ALJ erred in discounting Plaintiff's testimony and the medical opinion of Dr. Lieberman, the record contains conflicting medical opinions and mixed findings about the extent of Plaintiff's limitations.

The mixed nature of the medical evidence raises questions regarding the extent of Plaintiff's disability, and further administrative proceedings to weigh these conflicting opinions and findings would be useful. This is especially true given the ALJ's finding that Plaintiff could return to his former work and her consequent failure to consider whether Plaintiff could perform work of a more limited nature based on a correct RFC.

**IT IS ORDERED** that the final decision of the Commissioner of Social Security is **vacated** and this case is **remanded** for further proceedings consistent with this opinion. The Clerk shall enter judgment accordingly and **terminate** this action.

Dated this 7th day of April, 2020.

David G. Campbell
Senior United States District Judge